CIVIL RIGHTS ACTION UNDER 42 U.S.C. § 1983
IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL RILEY K.                          NO. 1:21-cv-1647

V.

GEORGE MILLER, et al.                    HON. Judge YVETTE KANE
ALL InDividual Capacity
AND OFFICIAL CAPACITY

## AMENDED COMPLAINT

Plaintiff, Daniel Riley Files An Amended Complaint
In Pursuant to Fed. R. Civ. P. Rule 15(a)

1. Plaintiff Files this Amended Complaint In Response to
the Defendant's Dr. JOHN LISIAK, Dr. Eric Dewarren, and
DR. Scott Prince Motion to DISMISS Plaintiff's Complaint
Pursuant to Fed. R. Civ. P. 12(b)(6), Through their attorney's,
Weber Gallagher Simpson Stapleton Fires & Newby LLP.

2. Plaintiff Also files, this Amended Complaint In Response to the defendants
Miller, Cirelli, Grillo, Schweinsburg, Gibson, Rishel, (Major) Gibson, Martin, Moser,
Hendrick, Smith, Hanley, Schuman, Odell, Bauer, Gardner, Keller, Williams, Oliver,
Horvath, Haffman, Bohinski, Stacy Miller, Aponte, Jason Williams, Spear, Amaral,
Sankey, Martin, Mickowski, Valentine, Ransom Motion to Dismiss, Through
their Attorney, Office of the Attorney General (CALEB Curtis Emerson).

CIVIL RIGHTS ACTION UNDER 42 U.S.C. §1983
IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL K. RILEY # LS-2481 | CASE NO. 1:21-CV-1647
  PLAINTIFF        INMATE NUMBER |

V. _____|

INDIVIDUAL AND OFFICIAL CAPACITY | HON. JUDGE YVETTE KANE

GEORGE MILLER, et. al.,

## 2nd AMENDED COMPLAINT

# I. JURISDICTION & VENUE

1. This is a civil action authorized by 42 U.S.C § 1983 to redress the deprivation under color of state law, of rights secured by the Constitution of the United States. Plaintiff also brings this action under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et. Seq.; and Section 504 of the Rehabilitation Act. 29 U.S.C. § 794(a). This court has jurisdiction under 28 U.S.C. Section 1331, 1343 (a)(3). The court has supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. Section 1367.

2. The United States District Court for the Middle District of Pennsylvania is the appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred.

# II. PLAINTIFF

3. Plaintiff Daniel K. Riley, Inmate Number LS-2481, is and was at all times mentioned herein a prisoner of the state of Pennsylvania in the custody of the Pennsylvania Department of Corrections. He is currently confined in State Correctional Institution Rockview, Box A: 1 Rockview Place, Bellefonte, PA 16823.

2.

# III Defendants

4. Defendant, George Miller is the Superintendent of SCI Waymart, P.O. Box 256 Route 6, Waymart, Pa. 18472 He is legally Responsible for the operation of SCI Waymart and for the welfare of ALL Inmates in that prison. Sued In official And Individual CAPACITY.

5. Defendant, James J. Cirelli is the Deputy Superintendent For Facilities Management of SCI Waymart. Sued In official And Individual Capacity.

6. Defendant, Joseph Grillo is the Deputy Superintendent For Centralized Services of SCI Waymart. Sued IN official And Individual Capacity.

7. Defendant, Timothy Schweinsburg is the Corrections Facility Maintenance Manager 3. He is the Head Maintenace Manager In Charge at SCI Waymart. Sued In Individual CAPACITY

8. Defendant, Kevin Gibson D. is the PE, Chief Engineer of the PA DOC, 1920 Technology Parkway, MechanicsBurg, Pa. 17050 He was the Chief facilities Manager of the PA DOC. Sued In Individual CAPACITY

9. Defendant, Charles Rishel is the Architectural Supervisor of the Pennsylvania Department of Corrections, 1920 Technology Parkway, MechanicsBurg, Pa. 17050. Sued In Individual Capacity.

10. Defendant, Major Gibson is a Correctional Officer of the PA DOC, who held the Rank of Major / COS at SCI Waymart, P.O. Box 256 Route 6, Waymart, Pa 18472. Sued In Individual CAPACITY.

11. Defendant, Bryan Martin is a Correctional Officer of the PA DOC, who held the Rank of Lieutenant / CO3 at SCI Waymart. Sued In official & Individual Capacity.

12. Defendant, Mark Moser is a Correctional Officer of the Pa DOC, who held the rank of Captain / CO4 at SCI Waymart. Sued In Individual Capacity.

13. Defendant, James Hendrick is a Correctional Officer of the PA DOC, who held the Rank of Lieutenant / CO3 at SCI Waymart. Sued In Individual And Official Capacity.

3

5

14. Defendant, Derek Smith is a Correctional Officer at the PA
DOC, who held the Rank of Lieutenant/CO3 at SCI Waymart, PD.
Box 256, Route 6, Waymart, Pa 18472. Sued in Official and individual capacity.

15. Defendant, Thomas Manley is a Correctional Officer at the PA DOC,
who held the Rank of Sergeant/CO2 at SCI Waymart. Sued in Individual capacity.

16. Defendant, Chad Schiavon is a Correctional Officer at the PA DOC,
who held the Rank of CO1 at SCI Waymart. Sued in Individual Capacity.

17. Defendant, John Odell is a Correctional Officer at the PA DOC,
who held the Rank of CO1 at SCI Waymart. Sued in Individual Capacity.

18. Defendant, Scott Rower is a Correctional Officer at the PA DOC,
who Held the Rank of CO1 at SCI Waymart. Sued in Individual Capacity.

19. Defendant, Richard Gardner is a Correctional Officer at the PA DOC,
who held the Rank of CO1 at SCI Waymart. Sued in Individual Capacity.

20. Defendant, Neal Keller is a Correctional Officer at the PA
DOC, who HELD the rank of CO1 at SCI Waymart. Sued in Individual
Capacity.

21. Defendant, John Williams is a Correctional Officer at the PA
DOC, Who held the rank of CO1 at SCI Waymart, P.O. Box 256.
Route 6, Waymart, PA 18472. Sued in Individual Capacity.

22. Defendant, Eric Oliver is a Correctional Officer at the PA
DOC, who held the rank of CO3 at SCI Waymart. Sued in Official
and individual capacity.

23. Defendant, Paul Horvath is a Correctional Officer at the PA
DOC, with held the Rank of Captain/CO4 of SCI Waymart. Sued in
official and individual capacity.

24. Defendant, Desiree Hartman is the Correctional Health Care
Administrator (CHCA) at SCI Waymart. She is legally responsible for
the operation of the Medical Department, at SCI Waymart, P.O. Box
256, Route 6, Waymart, Pa. 18472. Sued in official and individual capacity.

6

35. Defendant, Dr. John Lisiak is a Doctor employed with the PA DOC. He is the Head Doctor at SCI Waymart's Medical Department. P.O. Box 256 Route 6, Waymart, Pa. 18472. Sued in official & Individual Capacity.

36. Defendant, Dr. Eric Dewirren is a Doctor employed with the PA DOC. His is the On Call Doctor at SCI Waymart's Medical Department. P.O. Box 256 Route 6, Waymart, PA 18472. Sued in official & individual Capacity.

37. Defendant, Jason Babinski was a Correctional Officer at the PA DOC, who held the rank of Major/ICS at SCI Dallas, 1000 Follies Rd. Dallas, Pa. 18612. He is now a Deputy superintendent For Centralized Services. Sued in official, And individual Capacity.

38. Defendant, Stacey Hiller was A Deputy Superintendent at SCI Dallas, 1000 Follies Rd. Dallas, Pa. 18612. Sued in official And individual Capacity.

39. Defendant, Geraldo Aponte is the Deputy Superintendent for facilities Management at SCI Dallas, 1000 Follies Rd. Dallas, Pa 1812. Sued in individual and official Capacity.

30. Defendant, Jason Williams is a Correctional Officer at the PA DOC, who held the rank of Lieutenant/CO3 at SCI Dallas. Sued in Individual & official Capacity.

31. Defendant, David Speet is a Correctional Officer at the PA DOC, who held the rank of Lieutenant/CO3 at SCI Dallas. Sued in official & individual Capacity.

32. Defendant, Kevin Almand was/is a Correctional Officer at the PA DOC who held the rank of Lieutenant/CO3 at SCI Dallas. Sued in Individual & official Capacity.

33. Defendant, Richael Sankey is/was a Correctional Officer at the PA DOC, who held the rank of Sergeant/CO3 at SCI Dallas. Sued in Individual & official Capacity.

34. Defendant, Lea Martin is the Correctional Health Care Administrator (CHCA) at SCI Dallas. She is legally Responsible for the Operation of SCI Dallas's Medical Department, 1000 Follies Rd. Dallas, PA 18612. Sued in Individual & official Capacity.

35. Defendant, Dr. Scott Prince is a Doctor Employed with the PA Doc. He is the Head Doctor at SCI Dallas's Medical Department, 1000 Follies Rd. Dallas, Pa. 18612. Sued in Individual Departmental Capacity. (And official Capacity.)

36. Defendant, James Hitkowski is a correctional officer of the PA DOC who held the rank of Lieutenant/CO3 at SCI Dallas, 1000 Follies Rd.: Dallas, PA 18612. Sued in Individual & official Capacity.

37. Defendant, Robert Valentine is a correctional officer of the PA DOC who held the rank of CO1 at SCI Dallas, 1000 Follies Rd.; Dallas, PA 18612. Sued in Individual Capacity.

38. Defendant, Kevin Ransom is the Superintendent of SCI Dallas, 1000 Follies Rd., Dallas, PA 18612. Sued in Individual & Official Capacity. He is legally Responsible for the operation of SCI Dallas and for the Walfare of ALL inmates in that Prison.

39. Defendant, Pennsylvania Department of Corrections, 1920 Technology Parkway, Mechanicsburg, PA 17050. The PENNSYLVANIA Department of Corrections is a Public Entity, that govern ALL state correctional Institutions in the state of Pennsylvania. State and federal funds are used to operate the Prison, employ and Compensate Prison Staff and assure that, at all times, the Prison remains in compliance with federal and state law.

40. Defendant, John Wetzel is/was the Secretary of Corrections, 1920 Technology Parkway, Mechanicsburg, PA 17050. He is/was Responsible for the operations of ALL SCI's in Pennsylvania Department of Corrections. Sued in Official Capacity.

ALL of these Defendants at all Relevant times were acting under color of State law.

6.

## IV. Statement of Facts

40. At all time Relevant to this complaint plaintiff, Daniel Riley was a Level 5 AC Inmate housed In SCI Waymart's Restricted Housing Unit (RHU) on Block N1, Cell 1016, 1007, and Medical Infirmary Isolation Cell. Plaintiff Riley was Also Housed at SCI Dallas on the P.O.R Unit, cell 17c d/or 3cell at all times Relevant to this complaint.

41. On the days Leading up to 9/27/19, plaintiff Riley informed Multiple RHU Staff that he didn't want to be placed inside certain RHU Recreational Pins due to the severe damages, cracks, & holes in the Concrete of some RHU Pins. These staff included CO3 James Hendrick, CO2 Hanley, CO1 Schuman, CO1 Odell, CO1 Bauer, CO1 Gardner, CO1 Keller.

42. Although plaintiff was Unaware at the time exactly what pins had Damages & which ones did not, other Inmates complained to staff about Being Inside these damaged cages however the Above Correctional officers will state: "O well WE'RE NOT Running two yards, and Until the other RHU yard get FIXED Deal with it."

43. Plaintiff Stopped CO3 Hendrick one day and explained that He did NOT want to Be placed Inside the RHU cages with the cracks & Holes in the Concrete because It will Be hard to Exercise. CO3 Hendrick Stated "Shut UP and Deal with it"

44. On September 27, 2019 at, around, or Between 7:00am and 8:30am, RHU morning yard was Being Conducted by Defendants CO2 Hanley, CO1 Schuman, CO1 Odell, CO1 Bauer, CO1 Gardner, and CO3 Hendrick. Upon Information and Beliefs, PA DOC Prison policy Indicates that all RHU

7.

Inmates be afforded the good recreation to exercise (See: Grievance #38853 as exhibit A)

45. Plaintiff Riley was escorted to the Restricted housing unit (RHU) yard by the above metioned defendants for the one hour Recreation period & placed in the second RHU yard pin from D Block Exit door which is referred to as rec. Pin #6 (See: exhibit A-1).

46. This rec. pin was known by the defendants mentioned herein to have multiple damages, including large cracks & holes in the concrete. (See: exhibit A-1.)

47. Plaintiff Riley was placed inside the same Rec Pin as (with Shamel Jones # EZ-2128, Inmates Darryl Johnson #LN-3163, Jesse Hartman #MQ9838, James Laune #NL-0617, and Bernard Witherspoon was in other surrounding Rec Pins & could see directly into Riley's Rec Pin.

48. As Riley was exercising inside the Rec Pin his foot got caught in a deterioratin hole in the Concrete that he failed to see causing him to twist his ankle, hit the fence head first, & fell backwards landing extremely hard on his Back & head. The fall knocked Riley unconscious. (See: CCTV camera footage).

49. Upon Information and belief, the Inmates mentioned herein who witnessed this Fall Immediately began to scream "MAN DOWN", as alert the correctional officers being as though there was no officers or staff present in the RHU yard when this incident occurred.

50. When the Plaintiff regained conciousness defendants Cottsshuman & Cottodel was standing over top of him with co-Manley standing to the side. These officers attempted to help the Plaintiff stand up how-ever he was in to much pain to be moved immediately.

51. The fall caused the Plaintiff extreme pain in his mid & lower Back, Neck, Ankle, & head, upon information & belief the Plaintiff suffered a sprain ankle, sprain spinal cord, Lumbosacral sprain, nerve damage in his lower Back, frequent Back spasms, bruised head, frequent Severe headaches, & neck stiffness. Additionally Plaintiff Couldn't ambulate with stable gait or stand up support due to his Injuries. (See: Grievance #38853 Exhibit A)

52. CO2 Manley contacted medical for assistance and two Male Nurses Arrived (unidentified) with a wheelchair. Plaintiff was Picked up By the Officers, placed In the wheelchaire despite his Complaints of Extreme pain in his Back, neck, head, and ankle.

53. Plaintiff was Not Immediately taken to medical or a hosptial. Plaintiff was Locked at by a Unidentified male Nurse In the Hallway. Plaintiff was then Rolled to his RHU Cell, N-1 1016, Carried Insided, And placed on the Bed.

54. Plaintiff Contiuned to Complain about being dizzy and Being in severe pain however his Complaints was ignored & he was told by the two Male nurses that he would Be given some tylenol. (See: CCTV Camera footage)

55. At or around 11:00am a Unidentified Female PA Nurse brought the Plaintiff two tylenols For pain, took pictures of the Back of his head & Ankle, and Looked at his Back. She ordered an X-Ray for his Ankle. An XRay was taken of his Ankle. Riley continued to Complain of having Constant Back pains, head pains, Neck & ankle pain However he was told to "Get some Rest, ICE Will Be Provided, And to walk It off."

56. Plaintiff stopped CO2 Manley & Informed him that he needed to go to medical Immediately because of the Extreme pain he was experiencing. CO3/Manley said "Medical would Come Back." They Never Came.

57. That same day at, around, or Between 4:00pm & 6:00pm Plaintiff's entire Back & Legs Locked up on him & he started to experi-ence extremely painful Back Spasms. Plaintiff Cried & Screamed For Help.

9

58. COA Judge, who was working 3-103HFT Relief in the RHU, found the Plaintiff in this painful state while passing out the evening meal. COA Judge called on immediate medical assistance/emergency and Plaintiff was removed from his cell in a stretcher with the help of Medical Staff & Correctional officers, including shift commander CO-1 Haircloth (Defendant). This was all caught on CCTV camera footage in Plaintiff's RHU cell N-1, 1016 & CCTV RHU Block N-1 camera footage.

59. Riley (Plaintiff) was rushed to Wayne Memorial Hospital by ambulance. COA Judge accompanied Plaintiff along with other Unidentified officers. Plaintiff was given X-Ray's & the following pain medication by Wayne Memorial Hospital: Tylenol 325mg, Flexeril 10mg, decadron 10mg and ultram 50mg. Plaintiff was discharged from the hospital later that night and placed on bed rest in an Infirmary Unit, in a Medical Isolation Cell 1002.

60. The following morning on 9/28/2019 around 7am, Plaintiff was seen by defendant Dr. Delbarren. Plaintiff inform Dr. Delbarren that he's been in Pain all night & his back continues to lock up on him & he's been having back spasms all night. Plaintiff also told Dr. Delbarren that its hard for him to stand or walk & the pain is unbearable.

61. Defendant Dr. Delbarren Did not conduct any examination of Plaintiff. He simply stated "Nothing is broken, your X-Rays were clear so I'm sending you back to the RHU." Plaintiff complaints on Pain & inability to walk or stand, was ignored & on Deaf ears As Dr. Delbarren Exited his isolation cell.

62. Between 10:30am - 10:35am that same day Plaintiff was escorted back to the RHU via wheelchair by Defendant CO-3 Hendrich & CO-Lowe, An Unidentified officer, & An Unidentified Nurse. Plaintiff was covered inside his cell N-1 1016 & Placed on the Bed. (See: Camera footage)

63. At or around 5:30pm on 9/28/19, Plaintiff informed COI Galea during his rounds that he needed medical assistance because he was experiencing Extremely painful Back spasms & his Back was locked up to the point where he couldn't move his legs or body.
COI Galea ignored Plaintiff Cries for help for almost 3 hours.

64. Around 7:10pm Defendant CO3 Baylon Maedin came to the Plaintiffs cell door (1016) & ask the Plaintiff to come to the cell door to get handcuffed. Plaintiff told CO3 Maedin that he couldn't move to get his Back was locked up & he was having Back spasms.

65. Defendant Maedin Refused to allow Medical staff enter the Plaintiffs cell to help him IF he didn't get up to get hand-cuffed at the Door. Plaintiff repeatedly informed CO3 Maedin through Pain & tears of his Inability to move. Because his Back was locked up & he was experiencing painful Back spasms. Despite Being aware of the Injuries Plaintiff suffered the previous day, CO3 Maedin Refused to render Immediated Medical assistance & Denied Medical assistance entirely into Plaintiffs cell to help him. (See grievance #833079 as exhibit B).

66. Defendant Maedin had the Plaintiff's cell with Medical Staff only to Return an hour later. Plaintiff Received no Relief for Help the entire time they were gone Because of the pain. He was suffering.

67. Again CO3 Maedin told Riley he would not Receive any help or treatment or Medical attention IF he didn't get up off the door, despite Plaintiff pleas for Help & Pain. CO3 Maedin could clearly see that this was an medical emergency, as he looked inside Plaintiff's cell.

68. When Plaintiff attempted to got to the cell door his Back & legs gave out causing him to fall hard, striking his head on the all steel Lesing conciousness. when Riley Regained conciousness he was extremely dizzy & in severe pain, even more than before.

69. At that point CO3 Martin & a 6 man SERT TEAM decided to conduct a cell extraction on the Plaintiff. Upon Information & Belief the cell door was opened, & while Riley was laying unconscious on the floor, a Shield was held over him. He was handcuffed, shackled, picked up off the floor, thrown on the Bed and restrained (held down) on the Bed which caused him additional pain. AT NO POINT did the Plaintiff pose any threat of violence, or show any signs of aggression (See: cell extraction video footage of TM Riley #LSH481 on 9/18/19 between 7:00pm - 8:30pm) (also see: N-1101 cell CCTV camera footage).

70. When Plaintiff regained consciousness he informed CO3 Martin & the Unidentified SERT TEAM OFFICERS that they were causing him more pain. Plaintiff told CO3 Martin that he wanted file a Grievance on him.

71. Ultimately Plaintiff was given a 30mg. shot of Toradol by RN Chad Wallace for the pain & again Removed from his cell by stretcher. Riley was still being Restrained per CO3 Martin Orders despite Being handcuffed, shackled, & NOT posing any threat of violence. These Restraints were Extremely painful due to Plaintiff's condition. (See: cell extraction video of TM Riley LSH481 on 9/18/19 between 700pm & 830pm) (also see: grievance #833074 as Exhibit B).

73. On 9/18/19 Plaintiff was again Rushed to Geisinger CMC Hospital ER in Scranton, PA via ambulance. CT Scans & X-Ray test were done. CMC hospital prescribed the following Medications; Tylenol 325mg, Flexeril 10mg, decadron 10mg, & Ultram 50mg for Plaintiff's Pain & Suffering. (See: Plaintiff's Medical Records)

73. Plaintiff was released from the Hospital the following morning on 9/19/19 & placed on SCI Waymart's Infirmary unit. In Isolation cell 1002. Plaintiff was ultimately housed on the infirmary unit for a numerous amount of days.

74. On 9/08/19 Dr. Deroemeer (Defendant) accused Riley of Faking, stating his X-Rays were negative for Fractures or Broken Bones. Plaintiff informed Dr Deromen that he could not walk or Stand because of his Back injuries. Plaintiff explained to Dr. Deroemeer that his Back was in constant severe pain & ask him to order

More testing such as An MRI or Nerve testing. This Request was Denied.

75. Dr. Dewarren Attempted to force Riley to go Back to the RHU again despite his complaints of Pain & his Injury. Riley Refused.

76. On 9/30/19 Sgt/CO2 Oliver, who was working 2-10 shift on the Infirmary Unit at SCI Waymaet, Refused to Let Nurse Robert Inside My Cell to Issue plaintiff his prescribed pain Medication. CO2 Oliver is the Regular Infirmary Unit officer & has seen the Plaintiff Be transported to the Hospital on two different Occassion. CO2 Oliver was Well aware of Plaintiff's Injuries & his Inability to ambulate with Stable Gait However He still ordered Plaintiff to walk to the cell door to Receive his Pain Medication, & Evening MEALS.

77. Plaintiff Informed CO2 Oliver that he couldn't walk or stand Because of his Injuries. CO2 Oliver Stated "If you can't or don't come to the Door to Receive your Medication or Meals, you'll Be Considered/ Marked as Refusing."

78. Plaintiff was In so much pain & was so hungry he Attempt to get out his Bed. Plaintiff Immediately Fell down hitting his head Extremely hard & Suffered Severe pain In his Back. Plaintiff Attempted to get up But his Legs & Back gave out on him two more times. CO2 Oliver Refused Plaintiff his medication & his Evening meal & Left Plaintiff on the floor Screaming for help. (see Grievance #831-117 as Exhibit C)

NOTE: Plaintiff heard Nurse Roberts Inform CO2 Oliver of his Inability to walk However Sgt/CO2 Oliver Stated "I don't care he's An Level 5 Inmate."

79. That Same day (9/30/19) around 6:00pm-7:00pm Riley Stoped Captain Horvath & Lt. Smith (Defendants CO4 Horvath & CO3 Smith) while they were making there Rounds on the Inf. Unit. Riley Informed CO4 Horvath & CO3 Smith of his Condition & His Injuries as far as Not Being Able to ambulate. Note: CO4 Horvath was Already aware as he was one of the officers helping carry me to the Stretcher & Ambulance on 9/27/19.

80. Plaintiff Explained that It was Impossible to walk to the door because of his Injuries & Informed them of their Subordinate, CO2 Oliver, Refusing to Bring Plaintiff's Medication & Meals Inside his Isolation

13

14

Infirmary cell. CO3 Smith immediately stated he didn't care about the Plaintiffs Injuries, he's Now ordering his officers not to enter Plaintiff Inf. cell for anything Including Heads & Medication. Plaintiff attempted to talk to C/O Horvath was standing Behind CO3 Smith & was Cut Off By CO1 Horvath stating he ordered with his Subordinates. Both Officers walked away allowing this Cruel & unusual punishment to Reoccur. (see Grievance #831-117 as exhibit C)

81. 4 Days or two Later Plaintiff Informed Dr. Lisiak that officers & medical staff on 9-10 Shift was Refusing to Bring meds & food Into his Inf. Room. Dr. Lisiak Stated he would Fix that problem If he can Fact they were already aware of my Injuries & Inability to walk or Stand. Dr. Lisiak also stated that it was Nutrous to Have my Entire Bed In Front of the Inf. Room door. Plaintiff Informed him that it was either have the Bed in Front of the Door or go hungry & lie In pain all Day.

82. Dr. Lisiak said he would Fix the problem however 9-10 Shift & CO3 Bower Continued to have a Indifferent attitude.

83. Plaintiff Asked Dr. Lisiak to order him a Shower Seat So he could wash. Dr. Lisiak Said he would however it was Never ordered.

84. Plaintiff Sent Multiple Requests of Sick Slips to CHCA Ms. Hartman (Defendant) asking her to order him a Shower Seat to wash In. During his Stay in the Inf. Unit.

85. When Plaintiff Seen Ms. Hartman he asked her to order him a Shower Seat to wash In. Ms. Hartman Stated she would talk to Dr. Lisiak & get one ordered for me. I Informed Ms. Hart-man that I already talk to Dr. Lisiak & He Said He would order me one. However everytime I ask for one Medical & correction staff Always deny me or Ignore me. Ms. Hartman Stated she's Aware of my Injuries & would get one ordered however it was Never ordered.

86. Plaintiff asked medical staff & correctional staff Including defendants COII Oliver, CO williams, & COII Horvath for a Shower said it wash up In due to my Inability to walk or stand w/o support. Plaintiffs requests was always denied or Ignored.

87. Between the Dates of 9/22/19 and 10/14/19 Plaintiff was Refused a Shower event to Bath in.

88. Plaintiff fell down In the Shower on two separate occasions, 10/3/19 & 10/7/19 which Cause further Injuries to his Back & Extreme pain.

89. On Both occasions Plaintiff Screamed & Cried for help but none were came. Plaintiff was left he other option but to sit his Bare Bottom on the dirty Shower floor to wash his Bodily. Thus left Plaintiff deeply depressed & Caused him Extreme Pain & Bad anxiety.

90. Plaintiff did notify medical & Correctional Staff of his fall. They Stated "It wasn't their Problem" and "If their ard Bleeding You'll Be OK."(See Grievance # 831-19-133 as Exhibit D)

91. On 10/4/19 Plaintiff had a Physical therapy session with Physical Therapist Ren Sigrach Inside his Infirmary Room as part of his Rehabilitation process. Defendants CWA Hartman & Dr. Lisiak was present During the session. Plaintiff was promised By Dr. Lisiak & CWA Hartman to Be Scheduled For a P.T. Session once a Month, Every Month because Mr. Sigrach only comes to SCI Camp once a month In order to help Plaintiff Rehabilitate them his Back Injuries.

93. Plaintiff ask Dr. Lisiak to order an MRI to Be Done. Dr. Lisiak Said one would Be ordered along with other nerve TESTING.

93. An MRI was Never Done or Ordered For the Plaintiff, Despite Showing signs of Nerve pain & Damage.

94. On 10/10/19, The Program Review Committee (PRC), Which consisted of Defendants James Cirelli, Joseph Grillo, & CO3 Hendrick, did Rounds on the Infirmary Unit & Stop to talk to the Plaintiff.

95. Plaintiff asked PRC why were all his priviliges suspended Such as Recreation, Commissary, And phone Calls, When he was Receiving all off these things Before he got Injuried & hadn't done any-Thing wrong or Broken any policies? Plaintiff Also asked If his property Could Be Brought up to him.

96. PRC stated to the Plaintiff "All your priviliges were Suspended & will Remain Suspended Until you stop faking injuries & stop writing Bullsh*t grievances." PRC Also Stated "Your Not Allowed Any of your property on this Unit."

97. Plaintiff asked Deputy Grillo "how you gone punish me For Sustaining Injuries that wasn't my fault?" Deputy Grillo stated "Because your a fake and we have the power to do that." (See grievance #849-206 as Exhibit k)

98. Between the Dates of 10/1/19 & 10/16/19 Plaintiff was denied All Recreation, Commissary, personal property, & phone Calls by PRC (Deputy Cirelli, Deputy Grillo, & CO3 Hendrick) while Being housed on the Infirmary Unit as Retaliation for writing grievances About his fall & Injuries.

99. Plaintiff Sent Multiple Request of Staff And personally asked for his Rec., Commissary, Personal property, And phone calls. His Request went unanswered, was Ignored, OR was Denied During PRC Rounds. (See: grievance #827-576 as Exhibit E) (Also See R.O.S. Exhibits).

Case 3:21-cv-01847-MEM Document 582 Filed 05/31/22 Page 18 of 51

100. On 10/15/19 Plaintiff was Release from the Infirmary Unit to the RHU In a wheelchair due to his Inability to Mobilize with stable gait.

101. On 10/16/19 Plaintiff was ordered a wheelchair for out of cell Movement. He was Denied use of Cane for In cell Movement. (See: grievance # 829-224 as Exhibit I)

102. On 10/31/19 at, around, or Between 10:00am-11:0am CO2 Manley, & CO1 Gule approached the Plaintiff's Cell (N-1 1007) & Said CO3 Hendrick wanted to speak with him Inside the RHU Law Library Room.

103. CO2 Manley & CO1 Gule then escorted the Plaintiff to the Law Library In his wheelchair. (See N-1 RHU Block CCTV camera footage Between 10am-11am) When we Arrived CO1 Gule exited the Room & CO2 Manley (Defendant) Stayed, & CO3 Hendrick (Defendant) Entered the Room.

104. Soon a Defendant Hendrick entered the Room he Immediately Began to threaten the Plaintiff with Serious Bodily harm, torture, & even death Because of grievances the Plaintiff filed about his Injuries, Retaliatory Conduct, & other Unconstitutional practices that ~~He~~ was Experiencing at the hands of SCI Waymart Staff.

105. The defendant CO3 Hendrick States to the Plaintiff "Your Acting Like a fucking Inmate and not a fucking Convict" And If you don't stop writing all these Bullshit grievances I will do everything In my fucking Power to make Your stay down here a Living fucking Hell. I Don't give A fuck, I will find Anything to write you up for, I will take away All you fucking Privileges, And I will put you In the RHU yard for you one hr. Exercise by Your fucking Self If you don't fall Back on writing all these fucking grievances. I don't give a fuck about The Policy, I don't give a fuck about the Master Commissary Sheet, Your Not getting No fucking hair grease, Lotion, or any of that other shit because I don't allow It and this is my fucking RHU and I over Ride the policy and say It's a Security Risk. I have the Power to do that and the Superintendent & Deputies will Back me up. I've Been grievanced Before and I will everytime. I've Been Running this RHU

17

Since I_____ Liuetenant AND I DO what The fuck I want And I've Been doing so FOR 20yrs. You Being A pettyass Inmate, writting all of these pettyass grievances, that I will make sure gets Denied as frivolous, Instead of Acting Like A fucking connict who's doing a Wheels Bid (LIFE sentence). I'm telling you Now IF you contiune to make my JOB harder I'm going to make Your Bid HARDER And DO everything IN my power to take everything you have and personally make sure You get a sHit Load of DC time and torture you FOR Your ENTIRE fucking Stay at SCI Waymart. I'm the PROPERTY Liuetenant also and I'll Lose all Your fucking property and you will leave here with nothing IF You don't Aull Back and stop WRITING grievances. Your NOT getting No phone calls OR Extended Commissary. Thats A privilege that I can give And take Anytime It Away anytime I want so Im warning you Riley, stop writing grievances OR I will fuck you up And fuck you over FOR the Rest of Your Stay IN my RHU and don't think I Can't do It Because Believe me I done Killed Mutherfuckers Bigger & Stronger then You. I can kill you And Get Away with It. I've done It Before. (see geirevance #848-488 as Echibit #& grievance#836156)(see RHU N.1 Block & N.1 1007 cell CCTV camera footage for 10/31/19 between 10:00AM And 11:00AM)

106. Plaintiff was so scared for his Life he couldn't even Respond. Plaintiff Did Aile a grievance regarding this entire Incident. (see grievance #848488 & 836156 as Echibit H)

107. ON 11/1/19 the Plaintiff was scheduled to meet with physical Therapist Ron siejack for his second P.T. Session. Plaintiff was Never InFormed of this P.T. Session, NOR was he Called, & escorted to the Medical Department to Attend his P.T. Session.

Case 1:21-cv-00247-YK-LT Document 58-2 Filed 09/13/22 Page 20 of 51

108. Dr. Lisiak is Also Author Documented By Assuring that the Plaintiff Attend his Physical therapy Session.

109. Upon Information & Beliefs, SCI Waymart CHCA Hartman (Defendant) Lied & falsified documentation by stating/noting in the Plaintiff's Medical file that the Plaintiff Refused to attend his Physical Therapy Session with Mr. Siejack.

110. Plaintiff Never Refused his P.T. Session, he was Denied his P.T. Session without his Knowledge.

111. When Inmates Refuse Any Medical treatment A Medical Wavier form has to be signed & the Plaintiff never Signed a Wavier form. Plaintiff did file a grievance Concerning this matter which was Denied. (See: grievance #840673 as Exhibit G).

112. Plaintiff wrote multiple sick calls, Request of Staffs and filed A Grievance about Not Receiving the Physical Therapy Treatment he was promised. It was ordered By Dr. Lisiak that Riley (Plaintiff) Receive P.T. Treatment Once A month w/ Mr. Siejack & that order was Not followed. (See Request of Staff Exhibits W-S & Sick calls U1) (Also See Exhibit G)

Note: This same issue with falsifying documentation In Regards to P.T. treatment Reoccurred on 2/26/20 at SCI Smithfield. See: grievance #857417 as Exhibit H

113. On 11/4/19 at, around 10:34am, CO1 Keller, who works the RHU on the 6-2 shift, Approached plaintiff's RHU Cell N1 1007. CO1 Keller (defendant) Opened the plaintiff Wick Slot & threatened to issue the plaintiff false misconducts If He decided to go to Any RHU yard for his One hr. Exercise.

19

114. Defendant Keller Stated to the Plaintiff "If you don't withdraw them grievances youre not getting no guards & since you get the Sergeant involved I'm giving you a write up If you sign up the only guards. By the way they don't start giving you a write up. If you get funded up" Plaintiff Started to tell CO1 Keller he didn't do nothing wrong however. Before he get a chance to Response CO1 Keller Slammed the wicki Slut and walked away. (See grievance #8836/59 as exhibit F) (See CCTV camera footage Between 10:32am - 10:50am or for the state of time In Question).

115. Defendant Keller was Refering to the grievances Plaintiff previously filed about his injuries, Retaliatory conduct, & other Unconstitutional Practices that he experienced at the hands of SCI Waymart's Staff.

116. Defendants George Miller, James Cirelli, Joseph Grillie, Timothy Schwartzburg, Kevin D. Gibson, Charles Rishel, CO3 Gibson (Major), & CO3 James Hendrick were all aware of the damages to the RHU Yard Pins Concrete Ground and Responsible for the the Repair of these damages. These Staff were all Made aware of the Safety hazards & the Serious Risk of Injury and/or harm these RHU Yard Pins Exposed Inmates to Some time In 2017, 2018, and 2019, however they still turned a Blind eye to it.

117. These Defendants knew about the conduct & the Use of these Damaged Cages however they still facilitate it, approved it, condoned it or turned a Blind Eye to it, to the problem. (See Exhibits A1-A5, B1-B7, and C1 pg 1-49).

118. Defendants CO1 Monkay, CO1 Odell, CO1 Rowe, CO1 Gardner were all aware of the damages to the RHU Yard as they were the Regular Concerned Officers working the RHU 6-2shift & was Responsible for Conducting Morning yard. Additionally the Plaintiff & other Inmates complaint on Multiple occasions about Being placed in the Damaged Cages. These Staff had a Duty to Protect the Plaintiff & was aware of the safety hazards & Serious Risk of Injury &/or harm these RHU Cages Exposed the Plaintiff to, however they turned a Blind eye

to the problem.

119. Upon Information & Belief Defendant CO3 Hendrick was made aware of the safety hazards In 2016. (See: Exhibits A1-A3 and C1.) Other Defendants were made Aware IN 2017, 2018, 2019.

120. ON 11/3/19, 11/5/19, 11/7/19, 11/9/19, And 11/8/19 the Plaintiff filed sickcalls to DR. Lisiak Informing him that he was In Pain Everyday & the medication He was Receiving for pain Relief, Ibuprofen 600mg., Was Not working. Plaintiff was also Receiving Robaxin Which is A Skeletal muscle Relaxant 750mg. (see Exhibits U1-U6 sickcalls)

121. Plaintiff wrote Multiple sick call, Request of staff & personally talk to prison nurses & DR. Lisiak About his pain medication Not working. Plaintiff INformed DR. Lisiak that he was experiencing Level 10 pain everyday, However his Complaints fell on Deaf ears & was Ignored.

122. Dr. Eric Dewarren & ChCA Hartman (Defendants) Also Ignored the Plaintiff cries of Extreme pain & medications Being Unaffective in Regards to Alearviating the pain the plaintiff Was suffering Because of his Injuries. (See U1-U6 Exhibits: & grievance # 849208 as Exhibit L) (Also See Exhibits W1-W9). Defendant's Lisiak, Hartman, & Dewarren) denied Plaintiff's Reasonable Request for appropriate Medical Treatment and exposed him to Undue suffering and the threat of permanent Injury.

123. Upon Information & Beliefs DR. Lisiak Prescribed the following Medication to the Plaintiff: flexeril, IBuprofen 600mg., Toradol 30mg. (as Needed SHot), Skeletal muscle Relaxant 750mg., & Motrin 600mg.

124. Upon Information & Beliefs DR. Scott Prince Prescribed the following medications to the Plaintiff: Naproxen, 375mg., Tylenol Extra Strength 500mg., Pamelor, And Trileptal 600mg. (Nerve pain med).

125. Plaintiff Injuries were Noted In his medical files by Multiple doctors & nurses. (See: exhibits 1, 2, & 3 medical Records Review). DR. LISIAK Prescribed these Medication (some of) For SHort PERIods oF time.

126. On 11/11/19 Plaintiff was transferred from SCI Dallas in his wheelchair on a wheelchair accessible ambulance.

127. When Riley (Plaintiff) arrived at SCI Dallas he was placed in a MENTAL HEALTH Evaluation P.O.R. Cell (17C 1003).

128. On 11/13/19 Defendants Jason Bohinski, & Stacy Miller, & CHCA Lea Martin came to Plaintiff cell & informed him that his transfer to SCI Smithfield was placed on hold until his Medical Condition approves. (See Ex: V1-V10)
Note: Plaintiff was suppose to be transferred to SCI Smithfield the morning of 11/12/19.

129. Plaintiff was asked by Stacy Miller (Defendant) did he have any pending grievances at SCI wayment about his injuries? Plaintiff stated yes, & told his Miller that he had alot at other grievances also.

130. Defendant Miller asked the Plaintiff will he be willing to sign off on some and/or withdraw his grievances. Plaintiff stated "No".

131. Defendant Bohinski interjected stating "Well until you can walk again you'll be right here inside this cell with nothing. And when you sign off we'll talk."

132. Plaintiff then turned back to Defendant Miller and told her "I am a AC state Inmate & should be either be Placed in the Infirmary Unit or Receive my commissary, legal paperwork, clothes, & property."

133. Defendant Miller stated "When heard what my officer said, you'll get nothing until further notice." Her and Defendant Bohinski walked away. (See exhibit T.P.Q, C.R.S)

Note: At the time Defendant Miller was a Deputy Superintendent, & Jason Bohinski who is now A Deputy Superintendent was the Major.

134. On Nov.6,2019 the Plaintiff received a Report and Recommendation from U.S. Judge Elizabeth T. Hey stating that my Habeas Corpus petition will be dismissed & the Report & Recommendation will be Adopted if a Response wasn't filed by the Plaintiff within 14 days.

135. Plaintiff immediate wrote Request to shaffs to Defendants Bohinski, & CO3 Williams, telling/informing them that I would need my legal paperwork & Access to the Law library to meet my 14-day deadline.

136. The Defendants (Bohinski & CO3 Williams) either ignored me or denied my Access to the Law library to meet my 14-day deadline.

137. Plaintiff stopped Lt Amato, & Lt. Spease while they were conducting Rounds on two different occasions. Plaintiff informed them that he had a 14th-day deadline to file his Habeas Response and it was important that He receive his legal paperwork & access to the law library. (See Exhibit V1, V3, & V7)

Case 1:24-cv-01547-YK-LT Document 82 Filed 03/31/22 Page 24 of 51

138. Defendant Ameral stated "He'll See what he could Do But Don't count it Cause He's Not Making Any promises."

139. Defendant SPEAR stated "Its nothing I can Do About that, I guess you gone Miss that Deadline Im just following orders."

140. Plaintiff filed Multiple grievances, & sent Request of Staffs About NOT Being Afforded the opportunity to Receive His 1 HR EXERCISE Rec. Period. Plaintiff wasn't Afforded No Yard, dayroom, or out of cell movement during his Entire Stay on SCI Dallas P.O.R Unit IN 17c 1003cell. See Exhibits, O & T. See Exhibits V1-V16.

141. Between the Dates of 11/12/19 & 12/27/19 the plaintiff talked to Defendants Spear, CO3. Ameral, CO2 Sankey, And Bohinski About Not Being Afforded the opportunity to Attend Yard, Dayroom, or Any out of Cell Movement. Plaintiff was Always told to "withdraw them grievances And start walking & You can get Yard At your Next jail."

142. CO2 Sankey Response was Always "That's About my pay grade Riley."

143. CO3 Williams Never Responsed to Any of the Plaintiff Request of Staff."

144. Plaintiff's Habeas Corpus petition was Ultimately Dismissed Because He was Denied Access to the Courts, Law Library, & His Legal paper-work. SEE: CASE NO. CP SI-CR-0012329-2010. This Frustrated the Plaintiff.

145. Plaintiff Suffered Severe Mental Anguish From Being Locked IN the Cell All day, & Extreme Back pains From lying IN Bed All day.

146. Plaintiff was told by Defendants Ameral, Spear, & Sankey that Until he stop faking the he will Be turned off IN His P.O.R Cell 17c. Plaintiff window was Left open slightly IN the winter & the Heat was Left off Causing It to Be Freezing cold.

147. Plaintiff Continued to Ask Ameral, Spear, & Sankey & CO3 Williams For Clothes &/or Termals For warmth &/or ____ to Merely have Clean clothes for After He showered However he kept Being Denied.

149. Plaintiff wrote multiple Request of Staff to All of the Deputies & the Superintendent Defendant Ransom About these problems But would Never Receive A Response. The Deputies at the Time were Defendants Stacy Miller, & Jeraldo Aponte. These problems Caused Plaintiff Severe Mental Anguish. See Exhibits S, Grievance #835668. Also See Exhibits V1-V20.

Case 1:21-cv-01647-YK-LT Document 82 Filed 03/31/22 Page 25 of 51

150. Plaintiff Also Talk to Multiple Defendants/Psychologist About these Issues & Adverse Actions. These psych's were Lisa Kossutti, Tia Rodriguez, Temeka Austin, And Kelly McAndrew. (see: psychology Progress Notes from Ms. Kossuth, Ms Rodriguez, Ms Austin, & Ms McAndrew Between the Dates of 11/12/19 & 12/26/19 as Exhibit 4)

151. Plaintiff wrote Request of Staffs & filed Grievances About Staff Refusing to Issue him clean clothing. Upon Information & Belief Inmates Are suppose to Be Issued 3 t-shirts, 3 underwear, & 3 socks Upon Arrival At An Institution.

152. Plaintiff was suppose to Be transfered to SCI Smithfield on 11/12/19 so he only came to SCI Dallas with 2-T shirts, 4 pair of underwear, & 1 pair of socks.

153. Plaintiff Begged staff for clean clothes (underwear, T-shirts, & socks) Between the Dates of 11/11/19 and 12/26/19. These staff Included Defendants Sankey, CO3 Williams, CO3 Spear, CO3. Ameral, CO3 Mitkowski, And CO Valentine, who was the Regular officer working the Infirmary Unit (Valentine).

154. Plaintiff wrote to Every Deputy & Superintendent Ransom however He Never Received A Response. (See Exhibit VI-V-20)

155. Everytime Plaintiff would Ask these staff personally they would state "We Don't have Any clothes" or "We were told you get Nothing." (See grievance #835633 & 84240S as Exhibit R & Q.) (Also See Exhibit V1-V20)

156. On 11/13/19 Plaintiff was denied A shower Because staff didn't want to use his wheelchair to transport him to the shower. Specifically officers who Are Not Name In this civil action Denied Plaintiff the shower. however Defendant CO Mitkowski Covered up their Actions & Defendant Ransom Agreed with his subordinates.

157. Plaintiff was forced to wash up In A freezing cold cell with no heat, while sitting on the Toilet (metal) Seat. This humilated the Plaintiff & caused Him severe Mental Anguish. Plaintiff did Report these Actions to Dr. Prince (Defendant) & filed A Grievance. (see: grievance #84220S as Exhibit Q. Also See Dr. Prince Medical Notes on 11/18/19) (See CCTV Camera Footage for P.O.R cell 17c (1003) on 11/13/19 at or around 7:30pm) (Medical Notes EX: 1 & 2)

24

158. On 11/20/19 Defendant Dr. Scott Prince put in a doctor order for the Plaintiff to receive Physical Therapy treatment walks everyday as Rehabilitation for his injuries.

159. Due to the plaintiff Level 5 status, two Officers (Correctional) from the Security Department were ordered to assist the Medical Department nurses with the Physical Therapy walks.

160. Dr. Prince informed SCI Dallas administration & security department staff.

161. Upon Information & Belief the following Defendants were notified of Dr. Prince's doctor order; CO3 Spear, Deputy Superintendent Aponte, Jason Bohinski, CO3 Williams, Superintendent Ransom, Stacy Miller, Michael Sankey, CO3 Ameral, & CHCA Lea Martin.

162. All of the Above metioned Defendants Refused to follow the Doctor order placed by Dr. Prince & Refused to do the P.T. Walks Everyday.

163. These Defendants Also failed to assure that their subordinates Assist the medical dept. staff & nurses with the P.T. Walks Every Day as ordered.

164. Plaintiff filed multiple grievances About not Receiving his P.T. Walks everyday as ordered for his Rehabilitation & Plaintiff send Request of staff to Superintendent Ransom, Deputy Aponte, CO3 Spear, Deputy Stacy Miller, Jason Bohinski, CO3 Williams, & CO3 Ameral, CO Michael Sankey About not Receiving his P.T. Walks & staff &/or Correctional Officers Refusal to follow the order. Plaintiff also Personally talk to these staff. (See grievance #851062 & 845502 as Exhibit N.) (See Medical Records Between 11/20/19 & 12/26/19) (See Exhibits V5, & V12 thru V20) (See Exhibits U6) (See CCTV Camera footage Between 11/20/19 & 12/26/19 17c cell)

165. Plaintiff Rehabilitation process was prolonged, delayed, & he was hindered from receiving proper medical care & treatment Due to these staff Interfering with medical treatment & their Refusal to follow the doctor order. Plaintiff Continued to Receive inadequate Medical treatment & No Physical Therapy Walks.

166. The Plaintiff experienced Extreme Back pains & Severe mental Anguish Because these orders wasn't followed. Plaintiff Also fell Into a deep depression state. (see Mental Health Records) (See V12-V2 & U5 & U6 Exhibits). Plaintiff was denied by Defendants, Reasonable Requests for Appropriate Medical Treatment and this Exposed Plaintiff to Undue Suffering and the Threat of Permanent Injury.

167. Plaintiff was refused his Physical Therapy treatment walks on 8 (between) the Following Dates: 11/24/19, 11/27/19 - 12/3/19, 12/5/19 - 12/11/19, & 12/13/19 - 12/26/19.

168. For a total of 29 days staff interfered with Plaintiff's Medical treatment and refused to assist him with doctor orders &/or refused to follow the Doctor's order to Do PT walks Everyday.

169. Dr. Scott Prince (Defendant) failed to assure Plaintiff was receiving the Physical Therapy Treatment walks he ordered staff to do for the Plaintiff Rehabilitation. Plaintiff did inform Dr. Prince during his rounds on the P.C.R Unit & through Request at staff that Medical staff (nurses) and Correctional officers were not following the order to Do PT Treatment. Dr. Prince stated "he couldn't force the to follow-the order. All he Can Do is put the order in."

170. On 12/3/19 Plaintiff was seen by physical therapist Ron Siyack at SCI Dallas, For a P.T. Session.

171. Upon Information & Belief Plaintiff was transferred to SCI Smithfield around 12/27/19.

172. On 3/26/20 & 3/13/20 Plaintiff was seen by Physical Therapist Lou Ihude at SCI Smithfield for P.T. Treatment Sessions.

173. On 3/12/20 After a 5 month period of being confined to a wheelchair Riley (Plaintiff) was taken out the wheelchair & Issued a Cane. (see Exhibit 4.9, Health Care Items Receipt.)

174. On 7/17/20 after a 3 1/2 month period of using a walking Cane, Plaintiff was taken off the Cane & Issued a Back Brace, known as an ABD Binder. (see Exhibit 4.1, Health care Items Receipt.)

175. I hereby Incorporate by Reference All grievances and Attachments. Exhibits A-Z, 1-15 Y1, Y2, W1-W9, U1-U6, A1-A5, V1-V20, B1-B7, C1, pgs-1-43, X, & Grievance #'s 828-853, 833-079, 831-181, 827-576, 836-159, 849-208, 840-673, 848-488, 836-156, 833-090, 848-294, 831-838, 849-206, 857-417, 851-063, 845-503, 845-046, 851-046, 849-405, 835-633, 835-668, 835-660.

176. Upon Information and Belief, Superintendent George Hiller, & Kevin Ransom, John Deputies Cirelli, Grillo, Shaw Hiller & Aponte, and Secretary of Corrections John Wetzel failed to establish or implement adequate Policies, Practices and Procedures to protect and accommodate individuals with injuries and/or disabilities and to provide them with adequate medical care, and failed to maintain safe and structurally sound fixtures and facilities.

177. Pennsylvania Department of Corrections has been, and is a recipient of federal funds, and thus covered by the mandate of Section 504 of the Rehabilitation Act. SCI Waymart and SCI Dallas ARE (both) two facilities funded and operated by Pennsylvania Department of Corrections, and its operation comprises a program and service for Section 504 and ADA purposes.

178. Pennsylvania Department of Corrections failed and refused to reasonably modify its facilities, services, accommodations and programs to reason-ably accommodate Plaintiff's physical disability.

# V. EXHAUSTION OF LEGAL REMEDIES

179. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Waymart to try and resolve the problem. Plaintiff Riley filed grievance # 828-853 and appeal to every level til completion.

Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Waymart to try and resolve the problem. Plaintiff Riley filed grievance # 833-079 and appeal to every level til completion.

Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Waymart to try and resolve the problem. Plaintiff Riley filed grievance # 831-117 and appeal to every level til completion.

Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Waymart to try and resolve the problem. Plaintiff Riley filed grievance # 831-122 and appeal to every level til completion. SCI Dallas

180. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Waymart to try and resolve the problem. Plaintiff Riley filed grievance # 827-576 and appeal to every level til completion.

181. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Waymart to try and resolve the problem. Plaintiff Riley filed grievance # 836-159 and appeal to every level til completion.

182. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Waymart to try and resolve the problem. Plaintiff Riley filed grievance # 849-208 and appeal to every level til completion.

183. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Waymart to try and resolve the problem. Plaintiff Riley filed grievance # 840-673 and appeal to every level til completion.

184. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Waymart to try and resolve the problem. Plaintiff Riley filed grievance # 848-488 and appeal to every level til completion.

185. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Waymart to try and resolve the problem. Plaintiff Riley filed grievance # 836-156 and appeal to every level til completion.

186. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Waymart to try and resolve the problem. Plaintiff Riley filed grievance # 833-090 and appeal to every level til completion.

187. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Waymart to try and resolve the problem. Plaintiff Riley filed grievance # 829-224 and appeal to every level

til completion.

188. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Waymart to try and resolve the problem. Plaintiff Riley filed grievance # 831-823 and appeal to every level til completion.

189. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Waymart to try and resolve the problem. Plaintiff Riley filed grievance # 849-206 and appeal to every level til completion.

190. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Smithfield to try and resolve the problem. Plaintiff Riley filed grievance # 857-417 and appeal to every level til completion.

191. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Dallas to try and resolve the problem. Plaintiff Riley filed grievance # 851-062 and appeal to every level til completion.

192. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Dallas to try and resolve the problem. Plaintiff Riley filed grievance # 845-502 and appeal to every level til completion.

193. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Dallas to try and resolve the problem. Plaintiff Riley filed grievance # 845-046 and appeal to every level til completion.

194. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Dallas to try and resolve the problem. Plaintiff Riley filed grievance # 842-405 and appeal to every level til completion.

195. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Dallas to try and resolve the problem. Plaintiff Riley filed grievance # 835-633 and appeal to every level til completion.

196. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Dallas to try and resolve the problem. Plaintiff Riley filed grievance # 835-668 and appeal to every level til completion.

197. Plaintiff, Daniel Riley used the prisoner grievance procedure available at SCI Dallas to try and resolve the problem. Plaintiff Riley filed grievance # 835-660 and appeal to every level til completion.

198. All Plaintiff Grievances are attached as Exhibits A-T.

CAUSE OF
ACTIONS:

## VI. LEGAL CLAIMS

A. Deliberate Indifference / Unsafe Conditions

99. Plaintiff Riley reallege and incorporate by reference paragraphs 1-198

200. Defendant George Miller was aware of the damages to the concrete in the RHU yard and the safety hazards in the RHU yard since 2019. Defendant Miller acted with deliberate indifference by having knowledge of the damages in the rhu yard pins and still approve, condone, and turn a blind eye to his subordinates using these same pins for inmates exercise. Defendant Miller allowed his subordinates to place plaintiff Riley inside a damaged RHU pin and failed to act despite his knowledge of substantial risk of serious harm. Defendant Miller actions violated plaintiff Riley's rights under the 8th amendment to the United States Constitution, and caused plaintiff Riley's pain, suffering, physical injury, mental anguish, and emotional distress.

201. Defendant Sgt. Manley was aware of the damages to the concrete and safety hazards in the RHU yard pin, but showed deliberate indifference by placing Plaintiff Riley inside this damaged yard pin and exposing him to serious harm. Defendant Manley actions violated Plaintiff Riley's rights under the United States Constitution and caused the plaintiff pain, suffering, physical injury, mental anguish, and emotional distress.

202. Defendant J.Odell was aware of the damages to the concrete and safety hazards in the RHU yard pin, but showed deliberate indifference by placing Plaintiff Riley inside this damaged yard pin and exposing him to serious harm. Defendant J.Odell actions violated Plaintiff Riley's rights under the United States Constitution and caused the plaintiff pain, suffering, physical injury, mental anguish, and emotional distress.

203. Defendant C.Schuman was aware of the damages to the concrete and safety hazards in the RHU yard pin, but showed deliberate indifference by placing Plaintiff Riley inside this damaged yard pin and exposing him to serious harm. Defendant C.Schuman actions violated Plaintiff Riley's rights under the United States Constitution and caused the plaintiff pain, suffering, physical injury, mental anguish, and emotional distress.

204. Defendant CO1 Bauer was aware of the damages to the concrete and safety hazards in the RHU yard pin, but showed deliberate indifference by placing Plaintiff Riley inside this damaged yard pin and exposing him to serious harm. Defendant CO1 Bauer actions violated Plaintiff Riley's rights under the United States Constitution and caused the plaintiff pain, suffering, physical injury, mental anguish, and emotional distress.

205. Defendant R. Gardner was aware of the damages to the concrete and safety hazards in the RHU yard pin, but showed deliberate indifference by placing Plaintiff Riley inside this damaged yard pin and exposing him to serious harm. Defendant R.Gardner actions violated Plaintiff Riley's rights under the United States Constitution and caused the plaintiff pain, suffering, physical injury, mental anguish, and emotional distress.

206. Defendant James Hendrick was aware of the damages to the concrete and safety hazards in the RHU yard pin since 2016, but acted with deliberate indifference by supervising and allowing Plaintiff Riley to be placed insid this yard pin. Defendant J. Hendrick failed to act despite his knowledge of a substantial risk of serious harm. Defendant J.Hendrick actions violated plaintiff Riley's rights under the 8th amendment to the United States Constitution, and caused Riley's pain, suffering, physical injury, and emotional distress.

207. Defendant James J. Cirelli was aware of the damages to the concrete and safety hazards in the RHU yard pin since 2018.Defendant J. Cirelli acted with deliberate indifference by having knowledge of the damages in the RHU pins and still approve, condone, and turn a blind eye to his subordinates using these same pins for inmate exercise.Defendant J. Cirelli allowed his subordinates to place Riley inside a damagesd RHU pin and fail to act despite his knowledge of a substantial risk of serious harm. Defendant J. Cirelli actions violated plaintiff Riley's rights under the 8th amendment to the United States Constitution, and caused Riley's pain, suffering, physical injury, and emotional distress.

208. Defendant Joseph Grillo was aware of the damages to the concrete and safety hazards in the RHU yard pin since 2018.Defendant Joseph Grillo acted with deliberate indifference by having knowledge of the damages in the RHU pins and still approve, condone, and turn a blind eye to his subordinates using these same pins for inmate exercise.Defendant Joseph Grillo allowed his subordinates to place Riley inside a damagesd RHU pin and fail to act despite his knowledge of a substantial risk of serious harm. Defendant Joseph Grillo actions violated plaintiff Riley's rights under the 8th amendment to the United States Constitution, and caused Riley's pain, suffering, physical injury, and emotional distress.

209. Defendant Tim schweinsburg was aware of the damges to the concrtee in the RHU yard pins and was responsible for the fixing of these damages however he failed to repair these damages. Defendant Tim schweinsburg allowed correctional & administrative staff use of these damaged RHU pins and failed to act despite his knowledge of substantial risk of serious harm these poor prison living condition imposed. Plaintiff Riley was injured in one of the damaged RHU pins defendent Tim schweinsburg was responsible for repairing. Defendant Tim schweinsburg actions violated plaintiff Riley's rights under the 8th amendment to the United States Constitution, and caused Riley's pain, suffering, physical injury, and emotional distress.

210. Defendant Kevin Gibson was aware of the damages to the concrete in the RHU yard pins since 2018. He was one of those responsible for the repairing of these damages to the RHU yard pins. Defendent Gibson allowed correctional & administrative staff use of these damaged RHU pins and had knowlegde that these yard pins was being used for inmate exercise and failed to act despite his knowledge of substantial risk of serious harm these poor prison living condition imposed. Plaintiff Riley was injured in one of the damaged RHU pins defendent Kevin Gibson was responsible for repairing. Defendent Kevin Gibson actions violated plaintiff Riley's rights under the 8th amendment to the United States Constitution, And Caused Riley's (plaintiff) pain, suffering, PHysical & Emotional Injury.

311. Defendant Charles Rishel was aware of the dangers, unsafe conditions, and safety hazards in the RHU yard pins since 2017. He was one of those responsible for the repairing in the yard pins. Defendant Rishel had knowledge that these yard pins was being used for inmate exercise & failed to ACT. Despite his knowledge that these yard pins imposed Plaintiff unsafe/substantiell Risk of serious harm to those prison living conditions. Defendant Rishel was responsible for repairing. Defendant Rishel actions constituted Deliberate Indifference that violated Plaintiff's Eighth Amendment Right under the U.S. Constitution, & caused Plaintiff's physical injury & emotional injury.

**B. CAUSE OF ACTION: Deliberate Indifference to Serious MEDICAL NEEDS, under 42 U.S.C. §1983.**

Plaintiff incorporates & realloge by reference paragraphs 1-311.

312. Defendants Kevin Ransom, Jason Bobinski, Jason Williams, David Spoor, Kevin Ahmed, Stacy Hiller, Jeraldo Aponte, Lee Martin Acted with Deliberate Indifference by denying, delaying, and intentionally interfering with Medical Treatment violating Plaintiff's Eighth Amendment Right under the United States Constitution. These Defendants conspired with one another.

313. These Defendants Failure to follow Dr. Scott Prince Doctor order to assist Medical Staff with Plaintiff's Physical Therapy TREATMENT Despite their knowledge of Plaintiff's serious medical needs, Constituted Deliberate Indifference to Plaintiff's serious medical NEEDS.

314. The failure of Defendants Ransom, Bobinski, Hiller, and Aponte to ensure &/or take steps to ensure Plaintiff received his Doctor ordered Treatment and Allowing their subordinates to Disobey Dr. Prince orders, despite their knowledge of Plaintiff's serious Medical needs, Constituted Deliberate Indifference to Plaintiff's serious Medical needs.

315. As a result of Defendants Ransom, Bobinski, Hiller, Aponte, Williams, Spoor, Ahmed, Sankey, & Lee Martin Actions & Failure to provide Needed Treatment, Plaintiff suffered further injury and physical and emotional pain & injury.

316. Dr. Prince Placed a Doctor order for Plaintiff to Receive Physical therapy treatment which, everyday as part of Plaintiff's Rehabilitation. These Defendants failed to follow that order. Despite their knowledge of Plaintiff's serious Medical Needs.

317. Defendants ERIC OLIVER, Derek SMITH, John Williams, Paul Horvath, Desiree HARTMAN, Dr. John Lisiak, AND Eric DEWARREN ACTED WITH Deliberate INDIFFERENCE to Plaintiff Serious Medical needs by Denying, Delaying, and intentionally interfering with Medical TREATMENT, violating Plaintiff's Eighth Amendment Right under the UNITED STATES CONSTITUTION. These defendants all conspired with one another.

318. Defendants OLIVER, SMITH, & Horvath were aware of Plaintiff Injuries & his inability to ambulate with stable Gait Due to his condition, However they interfered with Medical TREATMENT by Refusing to Enter Plaintiff Infirmary Room to give Him his Meals & Medication, and by ordering their subordinates to not Enter Plaintiff Room to issue his Medication, Despite their knowledge of a substantial & Plaintiff Serious Medical needs. Their actions constituted Deliberate INDIFFERENCE, violating Plaintiffs Eighth Amendment Right under the UNITED STATES CONSTITUTION. Their actions caused Plaintiff Severe Pain, Suffering, Physical Injury, & Emotional Distress.

319. Defendant's OLIVER, SMITH, Horvath, & John Williams was aware of Plaintiff's Injuries and his inability to Ambulate w/Stable Gait Due to his condition, However they Refused to give Plaintiff a Shower Seat to Sit while bathing. Defendants SMITH & Horvath approved, condoned, facilitated, and turned a Blind eye to their subordinates Refusing Plaintiff a Shower Seat, & failed to Act Despite their knowledge of a substantial Risk of Serious Harm, & Despite their knowledge of Plaintiff Serious Medical needs, which constituted Deliberate INDIFFERENCE, violating Plaintiff's Eighth Amendment Right under the UNITED STATES CONSTITUTION. Their actions caused Plaintiff Severe Pain, Suffering, Physical Injury, Mental Anguish, and Emotional Distress.

220. Defendants Desiree Hartman and Dr. John Lisink was aware of Plaintiff injuries & his inability to ambulate w/stable gait due to his condition, however they failed and/or refused to order plaintiff a shower seat. These defendants acted with deliberate indifference to plaintiff serious medical needs, by having knowledge of plaintiff injuries & failing to act despite their knowledge of a substantial risk of serious harm, violating plaintiff's Eighth Amendment Right under the United States Constitution. As a result of their actions Plaintiff suffered severe pain, physical injury, mental anguish, and emotional distress.

221. Defendant Bry'an Martin was aware of Plaintiff's injuries however he refused to allow medical staff into plaintiff cell when he was in need of immediate medical attention. Defendant Martin acted with deliberate indifference to Plaintiff serious medical needs. Defendant Martin refusal to allow medical staff to render assistance despite having knowledge of a substantial risk of harm, violated the plaintiff's Eighth Amendment Right under the UNITED STATES CONSTITUTION. As a result plaintiff suffered severe pain, physical injuries, mental anguish, & emotional distress.

222. Defendants Dr. John Lisink & Eric Dewarren was aware of Plaintiff's injuries, however they acted with deliberate indifference to plaintiff serious medical needs, by refusing to render proper pain relief medication, violating Plaintiff's Eighth Amendment Right under the UNITED STATES CONSTITUTION. Their actions caused Plaintiff severe pain, suffering, mental anguish, and emotional distress.

33

223. Defendant DESIREE HARLMAN was aware of Plaintiff's Injuries, however acted with deliberate INDifference by Intefering with Medical treatment. Defendant Hartman Refused to Render Physical therapy treatment & falsified documentation by stating Plaintiff Refused to ATTEND Physical Therapy Treatment. Defendant HARTMAN Actions Violated PLAINTIFF's Eigtht Amendment Right's under the UNITED STATES Constitution & caused Plaintiff Severe Pain, Suffering, Mental Anguish, Physical Injury, and Emotional Distress.

C. Cause of Action: Retaliation Under Title 42 U.S.C. § 1983 Against
Defendants James Hendrick, Bryan Martin, Karl Keller, James Grell,
Joseph Grillo, Stacy Hiller, Jeraldo Aponte, Jason Bahinski, Michael Burkey,
David Spear, Kevin Amaral, James Hitkowski, Robert Valentine, Jason
Williams, Lee Martin.

Plaintiff Incorporates paragraph one through two-twenty three (1-333)

334. By threatening the Plaintiff with Physical violence, Death, False Misconducts
(DC-141), & Denial of his one hour exercise for Exercising his right to seek
Redress from the Prison through use of the Prison grievance System,
Defendant James Hendrick is/was Retaliating against the Plaintiff Unlaw-
fully, Violating Plaintiff's first Amendment right under the U.S. Constitution.
These Illegal actions caused Plaintiff injury to his First Amendment
Rights, Mental Anguish, that Emotional Distress Including pain & Suffering.

335. By threatening the Plaintiff with Physical violence, False Misconducts (DC141)
and Denial of his one hour exercise for Exercising his right to
seek Redress from the Prison through use of the Prisons grievance
system, Defendant Karl Keller is/was Retaliating against the Plaintiff
Unlawfully, Violating Plaintiff's 1st Amendment Right under the U.S.
Constitution. The Defendants actions cause Plaintiff injury to his 1st
Amendment Rights, severe Mental Anguish and severe Emotional Distress,
Including pain & Suffering.

336. Defendants Grell, Grillo, & Hendrick who are all apart of the program
Review committee (PRC) Conspired & Intentionally devised a plan to
take all of the Plaintiffs property & privileges such as phone calls, &
commissary, the exercise to punish the Plaintiff because he exercised
his right to seek Redress from the prison through the grievance system,
These Defendants Retaliated against the Plaintiff Unlawfully, violating
Plaintiff's first Amendment Right under the U.S. Constitution. The Defendants
actions cause Plaintiff injury to his 1st amendment rights, severe Mental
Anguish, Pain, suffering, & severe Emotional Distress.

337. Defendants Hiller, Bahinski, Aponte, & Lee Martin intentionally Denied
the Plaintiff clothing, commissary food, legal paperwork, & Access to
Law Library because Plaintiff exercised his right to seek Redress
through the prison grievance system. The Defendants Approved, Conspired,
Facilitated, & turned a Blind Eye to Retaliation by their Subordinates.

The Retaliation Conduct Methods to Deprived & Violated the Plaintiff First Amendment Rigth Under the U.S. Constitution. The Defendants Actions causers Plaintiff Injury to his 1st Amendment rights, Severe Mental Anguish, Pain, Suffering, Frustration, & Severe Emotional Distress.

228. Defendants Sankey, Spear, Amaral, Williams, Mitkowski, Valentine Ditentionally Denied Plaintiff CLEAN Clothing Such As Underwear, Socks, & T-Shirts Between 11/11/19 - 12/26/19. The Defendants Denied Plaintiff Showers, & Forced Plaintiff to wash up In A Freezing Cold Cell With No Heat sitting on a stainless steal Toliet seat, because Plaintiff exercised His right to seek Redress through the prison grievance system. These Defendants Retaliation Against the Plaintiff was Unlawful & Violated his 1st Amendment Right Under the U.S. Constitution. The Defendants Actions Caused Plaintiff Injury to His 1st Amendment right, Severe Mental Anguish, Pain, suffering, & Severe Emotional Distress.

229. Defendant Sankey, Spear, Amaral, William, Mitkowski denied Plaintiff Access to His property, Legal Paperwork, & Access to the Law Library, Because plaintiff exercised His Right to seek Redress through the Grievance system.
Defendant Sankey, spear, Amaral, Williams, & Mitkowski denied Plaintiff All ONE Hour Exercise His Entire Stay at SCI Dallas Between 11/11/19 - 12/26/19, Because plaintiff exercised his Right to seek Redress through the prison grievance System.

230. These Adverse Actions was commited against the Plaintiff Unlawfully Violating his First Amendment Rigth Under the U.S. Constition. These Defendants Actions Caused Plaintiff to miss His Deadline (14 day) to File A Response for His Habeas Corpus causing Him Extreme Frustration. The Defendants Action Also caused Plaintiff Injury to His First Amendment Rigth, Mental Anguish, Pain, Suffering, & Severe Emotional Distress.

231. Defendants Sankey, Spear, Amaral, Williams, Mitkowski, Valentine Intentionally Left the windows open during the Winter & Refused to turn the Heat on In plaintiff's cell Forcing him to suffer in the Freezing Cold, While Denying Him warm Clothing. These Defendants Used these Retaliatory Conduct Methods to

36

Punish Plaintiff After Exercising His Right to Seek Redress from the Prison through the prison grievance system. These Defendants Retaliated Against the Plaintiff Unlawfully, Violating Plaintiff's First Amendment Rights Under the U.S. Constitution, Causing Plaintiff Injury to His 1st Amendment Right, Severe Mental Anguish, Pain, Suffering, Severe Emotional & Physical Injury.

232. By Issuing Plaintiff A Misconduct (DC-141) For Requesting Medical care & Exercising His Right to seek Redress from the Prison through the use of the Prison grievance system, Defendant Bryan Martin is/was Retaliating Against the Plaintiff Unlawfully, violating Plaintiff's First Amendment Right Under the U.S. Constitution. The Defendant Actions Cause Riley (Plaintiff) Injury to His 1st Amendment Right, Severe Mental Anguish, & Severe Emotional Distress.

233. When Notified by the plaintiff through the prison grievance System, Request of Staff, & Personal Conversations, Defendants Bottinski, Miller, Aponte, & Lea Martin Failed to Address these Issues & Approve, condone, Facilitated, & turned A Blind Eye to their Subordinates Torture Methods, Harassment, Abuse, & Retaliatory Conduct.

234. All of the Above Mentioned Defendant Retaliated Against the Defendant Violating His First Amendment Right Under the U.S. Constitutions, Causing Injury to Plaintiff 1st Amendment Right, Frustration, Severe Mental Anguish, Pain, Suffering, & Severe Emotional Distress. These defendants ALL Conspired with Each Other In Adverse Actions Against the Plaintiff.

# D. CAUSE OF ACTION: Poor Prison Living Condition
UNDER 42 U.S.C. §1983

Plaintiff Incorporates Paragraph one Through two-thirty-four (1-234)

335. Defendants Kevin Ransom, Jason Bohinski, Stacy Hiller, Jerald Aponte, Jason Williams, David Spear, Kevin Amaral, Michael Sankey, James M.Hrkowski, & Robert Valentine subjected Plaintiff to poor prison living conditions and constituted Cruel And unusual Punishment, violating Plaintiff's Eighth Amendment Right under the UNITED STATES CONSTITUTION. These defendants All conspired with each other.

336. Defendant's Bohinski, Hiller, Aponte, Ransom, Williams, Spear, Amaral, and Sankey denied Plaintiff the opportunity of 1 Hr Outdoor Exercise And/or any Exercise outside the cell, and subjected him to the cell for 24Hrs a Day Between 11/13/19 and 1/1/19 when Plaintiff wasn't violating any prison rules, policies, and was not acting Disruptively, Constituted Cruel And unusual Punishment, violating Plaintiff's Eighth Amendment Right under the UNITED STATES Constitution. As a Result Plaintiff suffered severe Pain, Physical Injury, Mental Anguish & Emotional Distress.

337. Defendant's Amaral, Hitkowski, Valentine, Bohinski, Hiller, Aponte, Ransom, Williams, Spear, & Sankey Denied Plaintiff clean clothing &/or Approved, Condoned, Facilitated, & turned a Blind Eye to their Subordinates Denying Plaintiff clean clothes Between 11/13/19 AND 12/26/19 Which Constituted Cruel And unusual Punishment, violating Plaintiff's Eighth Amendment Right under the UNITED STATES Constitution. As a Result of their Actions Plaintiff suffered severe Mental Anguish & Emotional Distress.

338. Defendants Ransom, Bohinski, Miller, Aponte, Williams, Spear, Amaral, Sankey Hitkowski, & Valentine Force Plaintiff to live in a Freezing cold cell, with the windows open in the winter, with no HEAT, Constituted Cruel And unusual Punishment, violating Plaintiff's eight

Amendment Right Under the UNITED STATES Constitution. As A Result of their Actions plaintiff Suffered Severe Mental Anguish and Emotional Distress.

239. Defendant's Ranson, Miller, Bohinski, & Aponte was notified by Plaintiff, personally, Through Request of Staff's, & through the Grievance System However these Defendant's still Approved Condoned, Facilitated, And Turned A Blind Eye to their Subordinates Denying plaintiff Exercise, Warmth, Clothing, Legal Paperwork And personal property. Their Actions Constituted Cruel and Unusual Punishment And Violated Plaintiff's Eighth Amendment Under the United States Constitution. As A Result of their Actions, Plaintiff suffered Severe Frustration, Pain, Physical Injury, Mental Anguish, And Emotional Distress.

E: CAUSE OF Action THE TORT CLAIM OF NEGLIGENCE
AGAINST DefendAnts George Miller James Cirelli,
Joseph Grillo, Timothy Schweinsburg, Kevin D. Gibson, Charles
Rishel, Gibson (major), James Hendrick, Thomas Manley, Chad
Schuman, John Odell, Scott Bauer, Richard Gardner, John
Williams, Eric Cliver, Paul Harvatt, & Derek Smith.

Plaintiff Incorporates paragraph one Through two-third-Nine (1-239)

240. THE Inaction or actions of the defendants by Not Maintaining
the RHU yard pins caused Plaintiff to suffer A Devastating
Fall and suffer severe injuries to His Head, Back, and Ankle.

241. THE Above mentioned Defendants owed Plaintiff A duty of
Reasonable care to protect Him from the Hazardous
Conditions In the RHU yard pins.

242. THE Above mentioned Oefendants breached that duty by
failing to Assure Plaintiff wasn't placed Inside A Damage
RHU pin when Staff was Aware of the Damages
For multiple years, & knew the Risk of Injury.

243. THE Breach of Duty Resulted In serious Physical And
Emotional Injury & Damages.

244. The Breach of Duty proximately caused these Damages.

245. These Defendants ▬▬▬▬▬▬ Should have Expected the plaintiff
Would Not discover or Realize the danger & would fail to
Protect himself From It.

246. The Defendants Failed to exercise Reasonable care to protect
the plaintiff from the Dangers of the RHU yard pins.

247. The Defendants Should have known or by the exercise of
Reasonable care discovered the Conditions In the RHU yard &
Realized It Involved An Unreasonable risk of harm to the plaintiff.
(see: Exhibit A)

40

F. CAUSE OF ACTION: STATE TORT CLAIM OF MEDICAL Negligence Against Defendant's DR. JOHN LISIAK, DR. ERIC DEWARREN, CHCA DESIREE HARTMAN.

Plaintiff Incorporates Paragraph ONE Through two-Forty-Seven (1-247)

248. The Inactions OR Actions of the Defendants CauseD Plaintiff Severe Pain, Physical Injury, & A FALL.

249. The Defendants owed Plaintiff A Duty of Reasonable care.

250. The Breach of Duty Resulted In Serious Physical And Emotional Injury & Damages, & pain.

251. Dr. John Lisiak & Dr. Eric Dewarren failed to order A MRI For ▓▓▓ Plaintiff BACK Injuries to MAKE A proper Diagnosed Condition.

252. Dr. John Lisiak & Dr. Eric Dewarren failed to ORDER A Shower Chair for the Plaintiff to sit & Bath In.

253. Dr. John Lisiak & Dr. Eric Dewarren failed to ISSUE Plaintiff proper pain Relief Medication to Aliviate plaintiff Severe Pain. Plaintiff Informed these Defendants that the pain Medication he was Receiving was NON-Effective & Did Not Treat the severe pain He was suffering.

254. The Defendants Ignored &/or Denied Plaintiff Request For "Working" Pain Relief Medication.

41

352. Defendant CICH HARTMAN FAILED to ORDER Plaintiff a Shower Chair for him to Sit and Bath IN.

353. As a Result of ALL these Defendants Failure to ORDER Plaintiff a Shower Chair + Shower Chair HE FELL Down IN the SHOWER Causing him pain (Severe), Mental Anguish, Severe Emotional Distress, & Humiliation, Physical Injury.

354. Plaintiff was force to wash sitting his Bare Bottom on the filthy, Dirty Shower Floor Because of his Fall & the Defendant Negligence.

355. Defendant DR. Eric Dewaren failure to notice the Seriousness of Plaintiff Injuries cause Plaintiff More pain, suffering & Another fall. Dr. Dewaren Accused Plaintiff of "Faking" & Sent Him Back to the RHU without Reasonable care.

356. Defendants fail to Have Staff Aware to Enter Plaintiff Cell for His Medication Due to His Inability to Walk or Stand.

357. ALL of these Defendants SHOWED & PROVED to Be Medically Negligent to the Plaintiff Serious Medical Needs.

358. Defendant HARTMAN failed to Assure physical Therapy Treatment was conducted for Plaintiff on 11/1/14 & Assigned Medical Documentation.

359. These Defendants owed Plaintiff a duty of Reasonable care, & they Breached that Duty by Failing to provide plaintiff a shower seat, pain Relief, Hot testing, and physical therapy session. That Breach Resulted in Serious physical pain, emotional & physical injury & Damages. Plaintiff Medical problems (Back Injuries) were not treated properly, & the Breach of Duty proximately caused these Damages.

G. CAUSE OF Action: CRUEL AND UNUSUAL PUNISHMENT UNDER 42 U.S.C § 1983 Against ALL DEFENDANTS IN THIS ACTION.

Plaintiff Incorporate paragraph one through two-sixty-two (1-262).

363. ALL Parties In this action was COMplicit in the deterioration of the RHU yard at SCI Rockview, (defendants #4-10, #73, #15-20).

364. The defendants Forces such the Plaintiff to Conduct his One hour Outdoor Exercise, of SCI Rockview, in A Unsafe Hazardous, Dangerous Environment (RHU yard Pins).

365. The Defendants denied Plaintiff his One Hour Exercise Period on Multiple occasions at SCI Rockview and SCI Dallas For No Rational Reason, (Defendants #4-A3)(#A-7-34, 36-38).

366. The defendants denied Plaintiff Showers, Personal Property, Legal paperwork, Law Library, that Basic Necessities Such as Clothing & Head during the winter, at SCI Dallas. (defendants # A-7-34, 36-38).

367. The Defendants Forced Plaintiff to Live in a Freezing Cold Cell with no HEAT in the winter with open windows at SCI Dallas.

368. The Defendant denied Plaintiff A Shower chair of SCI Assigned & Interfer w/ Medical Treatment. (defendants #24-26).

369. The Defendant's Deliberately subjected the Plaintiff to Multiple Torture Methods, & Cruel and unusual Punishment. (Defendants # 4-38).

370. Plaintiff Eighth Amendment Rights Under the U.S. Constitution were violated by these Defendant's, causing Plaintiff severe PAIN, Suffering, Frustration, Physical Injury, Mental Anguish, & Severe Emotional Distress.

371. Defendant Bryan Hahn acted w/ Deliberate Indifference by having knowledge of Plaintiff Injuries & failure to act Despite his knowledge of serious harm to the Plaintiff violating his Eighth Amendment Right Under the U.S. Constitution & Causing Plaintiff severe pain, suffering, Mental Anguish, Physical Injury, and Emotional Distress.

H. CAUSE OF ACTION: Access to Courts/Interference with Access to Courts, Under 42 U.S.C. §1983.

Plaintiff reallege and incorporates paragraphs one through two-seventy-one (1-271)

272. Defendants Stacy Miller, Jason Bohinski, Jason Williams, Kevin Amaral, David Spear Refused to give plaintiff his Legal paperwork & Refuse to Allow him to Attend Law Library, Violating plaintiff First and Fourteeth Amendment Right Under the UNITED STATES Constitution.

273. As A Result plaintiff Missed his 14th day deadline to File A Response to a Report and Recommendation For His Habeas Corpus petition.

274. Plaintiff petition was dismissed Because he missed this Deadline.

275. As A Result of these defendants Actions plaintiff Suffered Injury to his First Amendment, severe Frustration And Impeded, Mental Anguish, & Emotional Distress.

276. Plaintiff was frustrated & Impeded in pursuing A NON Frivolous Claim. Plaintiff was Attempting to get A New Trial &/or Time credit to his CRIMINAL CASE CP-51-CR-0012329-2010.

277. By withholding Transcripts, previous filings, case laws, and judge opinions that was need to File A Response to the Report and Recommendation, the Defendants Interfered with Court Access.

278. By Denying plaintiff A chance to Attend Law Library Interfered with Access to the Courts & Assistance.

44

I. **CAUSE OF ACTION:** The Equal Protection Clause, Denied Fourteenth Amendment Right to Equal Protection Under 42 U.S.C. § 1983.

PLAINTIFF reallege and incorporates PARAGRAPHS one through two seventy-eight (1-278)

279. ALL OF the Defendants In this civil Action Complaint, #4-40 Denied PLAINTIFF Equal protection of the LAW, violating plaintiff fourteenth Amendment Right to Equal Protection Under the United States Constitution, & Cause PLAINTIFF Severe pain, Suffering, Physical Injury, Mental Anguish, & Emotional DISTRESS, And Frustration.

280. Plaintiff was treated Differently then Inmates in Similiar Situations, By the Defendants In this Action

281. PLAINTIFF was Denied Personal property, OutDoor Exercise, LEGAL Paperwork, Warmth, Clothing, Medical treatment AS IN pain Relief Medication, & Shower seat & Law Library.

282. Plaintiff was Also Denied Safe prison conditions. Plaintiff was Denied Showers, Medication, & Heats, And Access to courts.

283. The Defendants In this Action Denied plaintiff these things for NO Rational Reason, & For His Disabilities & Injuries.

284. ALL Defendants In this civil Action Violated the Plaintiff's Fourteenth Amendment right to Equal Protection, And Conspired with each other to DO so.

45

**J.** CAUSE OF ACTION: EXCESSIVE FORCE, EIGTHT AMENDMENT VIOLATION UNDER 42 U.S.C § 1983.

PLAINTIFF REALLEGE AND INCORPORATES Paragraphs One through two-Eightty-Four (1-284)

285. Defendant Bry'an Martin USED EXCESSIVE FORCE AGAINST the Plaintiff BY PERFORMING A VIOLENT CELL EXTRATION ON PLAINTIFF, WHEN HE (Plaintiff) WAS NOT VIOLATING ANY PRISON RULES, AND/OR POLICIES, WAS NOT ACTING disRUPTIVELY IN ANYWAY, AND WAS NOT POSING ANY THREAT to OFFICERS, STAFF, OR HIMSELF.

286. DEFENDANT MARTIN ACTIONS VIOLATED PLAINTIFF EIGTHT Amendment Rights UNDER THE UNITED STATES Constitution AND CAUSED PLAIN-tiff's PAIN, SUFFERING, PHYSICAL INJURY, MENTAL ANGUISH, AND EMOTIONAL DISTRESS.

46

K. CAUSE OF ACTION: FAILURE AND/OR REFUSAL TO PROVIDE AND/OR MAKE REASONABLE ACCOMMODATIONS FOR PLAINTIFF DISABILITY, IN VIOLATION OF TITLE II AND TITLE III OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE Rehabilitation Act, UNDER 42 U.S.C. §1983.

Plaintiff Reallege and INCORPORATES one through two-EIGHTY-SIX (1-286)

287. Defendants, GEORGE MILLER, GIRALLI, GRILLO, BRY'AN MARTIN, Hendrick, SMITH, OLIVER, HORVATH, HARTMAN, Dr. John Lissak, Dr. ERIC DEWATTEN, Bohinski, STACY MILLER, APONTE, Jason Williams, SPEAR, AMARAL, SANKEY, LEA MARTIN, Dr. Scott PRINCE, MITKOWSKI, RANSOM, PA DEP'T OF CORRECTIONS, JOHN WETZEL ACTIONS & INACTIONS VIOLATED TITLE II & TITLE III OF THE ADA AND SECTION 504 OF THE Rehabilitation Act, BY FAILING AND/OR REFUSING TO PROVIDE REASONABLE ACCOMMODATIONS FOR Plaintiff'S DISABILITIES, VIOLATING Plaintiff RIGHTS UNDER DISABILITY Statutes.

288. THESE Defendants denied AND/OR Excluded PLAINTIFF From the Benefits OF SERVICES, PROGRAMS, AND Activities WITHIN SCI WAYMART AND SCI DALLAS (PADOC).

47

## Prayer For Relief

WHEREFORE, Plaintiff Respectfully Prays that this Court enter Judgement Granting Plaintiff:

(1) A Declaration that the acts and Omissions described herein violated Plaintiff's Rights under the Constitution And Laws of the United States, and Statutorily Required Accommodations to the Plaintiff;

(2) Grant Compensatory damages for Physical and Emotional Injuries and Punitive damages for the Injuries and damages Caused by the acts and Omissions of the Defendants, against Each Defendant;

(3) A Jury Trial On all Issues Triable by Jury;

(4) Plaintiff's Costs in this Suit; and

(5) Any Additional Relief this Court Deems Just, Proper, And Equitable.

Respectfully Submitted,

DANIEL RILEY
#LS-3481
30 Rockview
1 Rockview Place
Box A.
Bellefonte, PA 16823

48

## VERIFICATION

I HAVE READ the foregoing Complaint AND Hereby Verify that the Matters Alleged therein are true, except as to the Matters on Information AND Belief, And, as to those, I Believe them to be true. I certify Under penalty of Perjury that the forgoing is true AND Correct.

Executed at Bellefonte, PA on January, 31, 2022

Respectfully Submitted

Daniel Riley
#LS-2481
SCI Rockview
Box A;
1 Rockview Place
Bellefonte, PA 16823

State of Pennsylvania
County of Centre
Signed before me on February 15, 2022 by
Daniel Riley

Commonwealth of Pennsylvania - Notary Seal
Barbara Lawler, Notary Public
Centre County
My commission expires November 22, 2023
Commission number 1360328
Member, Pennsylvania Association of Notaries

Barbara Lawler
Notarial Officer